UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

RICARDO LYONS,

        Petitioner,

– against –

HAROLD GRAHAM,

        Respondent.

**MEMORANDUM & ORDER**

15-CV-1246 (ERK)

KORMAN, *J.*:

As a criminal trial would later reveal, one evening in 2002, in a house in Far Rockaway, Queens, an argument arose among three of the residents—Wright; Peynado; and petitioner, Ricardo Lyons. Trial Transcript ("T") 613–16, 834, 841. Yelling quickly turned to worse, and Wright shot Peynado in the face. T772–76. Peynado still tried to escape, but as he did, Lyons caught him in a bear hug in front of the house. T960–62. Lyons held Peynado's hands behind his back while Wright approached and shot Peynado in the head a second time. T962–63. Wright then went back inside and came out with two shirts, which he and Lyons changed into. T780–81, 963. They ran off together while, from the window, Peynado's daughter watched her father lie dying in the street. T781, 964.[1]

    Wright's whereabouts are unknown. But police found Lyons two years later using an alias in Columbus, Ohio, and brought him back to Queens for a jury trial. T1003–07. Although he did not call witnesses or testify himself, T1193, 1195–96, Lyons suggested the defense, based on a statement he had made to police when arrested, that he had never shared Wright's intent to kill, T614–15, 1237–38. Rather, according to Lyons, Peynado had been going outside to his car where Lyons believed

---

[1] The transcripts often refer to Wright by his first name, "Dwayne," T1066; Peynado by the names "Sylvester Edwards" and "Mike," T691; and Lyons by the name "Teddy," T1219.

Peynado kept his own gun. So Lyons restrained Peynado not to help Wright kill, but only to protect himself from being shot by Peynado. As the statement said:

> [Peynado] came to the house and started an argument basically saying that we should leave today in a very violent tone as if he was ready to get his gun. … [Wright] went and fired a shot at [Peynado] and it caught him in the face and he ran outside toward his car as if he was going to get his gun. So I ran behind him and held on to him. Next thing I saw [Wright] coming out and [Wright] fired another shot that hit [Peynado] in the head killing him.

T1028–29.

The jury didn't buy it. Lyons was convicted of second-degree murder and is now serving an indeterminate sentence of seventeen to life. T1380. New York state courts rejected a direct appeal and a post-conviction petition alleging ineffective assistance of appellate counsel. *See People v. Lyons*, 94 A.D.3d 1020 (2d Dep't 2012), *leave to appeal denied*, 19 N.Y.3d 975 (2012); *People v. Lyons*, 113 A.D.3d 797 (2d Dep't 2014), *leave to appeal denied*, 24 N.Y.3d 1003 (2014), *reconsideration denied*, 26 N.Y.3d 931 (2015). Lyons now timely petitions this court for a writ of *habeas corpus* based on seven purported grounds of constitutional error. *See* 28 U.S.C. § 2254. These grounds all concern either Lyons's rejected defense or a quirk of the trial—that the court never swore in the *venire* panel.

## LEGAL STANDARD

Because all Lyons's arguments are legal rather than factual, I can grant relief only if the state court adjudications "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *Id.* at § 2254(d)(1). This means that I cannot grant relief if "fairminded jurists could disagree [about whether the state courts' arguments] are inconsistent with the holding in a prior decision of" the Supreme Court. *Cullen v. Pinholster*, 563 U.S. 170, 188 (2011) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). It also means that I usually cannot grant relief if the state court decisions turned on "independent and adequate state procedural grounds." *Walker v. Martin*, 562 U.S. 307, 316 (2011) (quoting *Coleman v. Thompson*, 501 U.S. 722, 730 (1991)).

2

**ANALYSIS**

I. *The* venire *oath*

Lyons's first point is that the trial court conducted *voir dire* without putting the prospective jurors under oath. Pet. 6–7.[2] Under New York law, once prospective criminal jurors are called, they "shall be immediately sworn to answer truthfully questions asked them relative to their qualifications to serve as jurors." N.Y. Crim. Proc. Law § 270.15(1)(a).[3] For whatever reason, very likely oversight, that did not happen during Lyons's trial. Once the prospective jurors were called, the judge began questioning them immediately. T179–82.[4] Lyons is surely right that if no oath was given, it was an error under New York law. But his trial counsel never objected, so the Appellate Division deemed the claim forfeited when Lyons's appellate counsel raised it on direct appeal. *Lyons*, 94 A.D.3d at 1020.

Even if I ignore the preservation problem, *see Whitley v. Ercole*, 642 F.3d 278, 286 (2d Cir. 2011), a state-law error alone does not entitle a *habeas* petitioner to relief. The error must also clearly arise under the Constitution. 28 U.S.C. § 2254(d)(1). And—although mistakes do happen—it has not been clearly established by the Supreme Court that the Constitution prohibits the error here. Lyons cites no Supreme Court case saying so, *see* Pet. 6–7, 105–13; Reply 1–8, nor has my own research uncovered one. Granted, the Supreme Court has held that, in specific circumstances such as capital cases, *voir dire* must include certain specific questions if requested. *See Morgan v. Illinois*, 504 U.S. 719, 729–31 (1992). But, if anything, hundred-year-old Supreme Court precedent strongly suggests that at least the form of a *venire* oath is a matter of state law alone. *See Baldwin v. Kansas*, 129 U.S. 52, 54–57 (1889) (petit jury oath); *see also Theard v. Artus*, 2012 WL 4756070, at *12–13 (E.D.N.Y. Aug. 27, 2012), *R&R adopted*,

---

[2] All citations to Lyons's petition are to the page or pages of the docketed PDF file.

[3] None of the New York laws I cite have been amended in ways relevant to this opinion since the dates at issue.

[4] Lyons does not dispute that the empaneled jury was properly sworn. *See* T579.

3

2012 WL 4757897 (E.D.N.Y. Oct. 4, 2012) (*venire* oath); *McLeod v. Graham*, 2010 WL 5125317, at *2, *6 (E.D.N.Y. Dec. 9, 2010) (*venire* oath); *Gaskin v. Graham*, 2009 WL 5214498, at *27–28 (E.D.N.Y. Dec. 30, 2009) (*venire* oath). Indeed, Lyons's appellate counsel (in a letter that Lyons attached to his petition) explained this seven years ago: "[the] violation does not implicate a federal constitutional claim and therefore would not be able to be presented as such in a federal habeas petition." Pet. 130.

I also note that a thorough Tenth Circuit opinion recently deemed the question whether the Constitution requires a sworn *jury*—surely at least as important as sworn *prospective* jurors—an issue "of first impression in the federal courts." *United States v. Turrietta*, 696 F.3d 972, 981 (10th Cir. 2012). "[A]ware of no binding authority, whether in the form of a constitutional provision, statute, rule, or judicial decision, addressing whether the Sixth Amendment right to trial by jury necessarily requires the jury be sworn," *id.*, the Tenth Circuit explicitly left the question open because, regardless, the issue was treated as forfeited and any error was not plain, *id.* at 973–74. By extension, the failure here to swear in prospective jurors is also not clearly established as constitutional error.

## II. *Assistance of appellate counsel*

On top of challenging the missing oath directly, Lyons also raises a related, but somewhat complicated, ineffective-assistance claim. Pet. 12–13, 123–28. By the time of his direct appeal, Lyons had concluded that his trial counsel was ineffective for not objecting to the missing oath. *Id.* at 130–32. He wanted his new, appellate counsel to say so. But appellate counsel did not raise that argument. So Lyons now claims that his appellate counsel was ineffective—for failing to argue that his trial counsel was ineffective.[5] The Appellate Division rejected this argument when Lyons presented it, in a petition for a writ of error *coram nobis*. *Lyons*, 113 A.D.3d at 797.

---

[5] Lyons does not present the underlying argument, which was never raised in state court, that trial counsel himself was ineffective.

4

In federal *habeas* petitions, ineffective-assistance challenges are exceedingly difficult. First, counsel must have performed deficiently, causing prejudice. *Strickland v. Washington*, 466 U.S. 668, 700 (1984). Deficient performance means that "the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690. Then, this "'highly deferential' look at counsel's performance" is itself examined "through the 'deferential lens of'" the federal *habea*s statute, which requires that errors be clearly established. *Cullen*, 563 U.S. at 190 (quoting *Strickland*, 466 U.S. at 689, and *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 (2009)).[6]

Particularly under this standard, Lyons's ineffective-assistance claim fails. Appellate counsel and Lyons discussed raising the missing oath; they just had a strategic disagreement about *how* to raise it. Appellate counsel chose a direct challenge only and argued that the missing oath was a "mode of proceedings error" such that no objection at trial was required. He explained his thinking in another letter that Lyons attached to his *habeas* petition:

> I have raised the failure to swear the jury as a "mode of proceedings" error that does not require an objection to preserve because I must, since there was no objection by your trial counsel to this error. The Court can agree, in which case, no objection is required to preserve the issue. The Court can disagree, ruling that the issue is unpreserved, and decline to address the issue because it was not preserved. Finally, the Court can find that the issue was not preserved however address it anyway, in the Court's interests of justice jurisdiction (which allows, but does not require, consideration of unpreserved legal issues).
> We could argue that to the extent preservation is required and trial counsel did not preserve it, that omission constituted ineffective assistance. I am reluctant to raise this argument because is [sic] there is no chance we will prevail on a claim that this was ineffective assistance, it does not improve our chances to [sic] of success on the non-swearing of the panel issue, and it would not form the basis for a federal habeas claim later.

Pet. 132.

---

[6] Indeed, because I am dealing with a state court's decision about ineffective assistance based on ineffective assistance, deference that is often called "double" may well be triple. *See Jones v. Holt*, 893 F. Supp. 2d 185, 196 (D.D.C. 2012) ("[Petitioner's] task is more difficult still—with this Court's standard of review approaching triple deference—because he brings claims of ineffective assistance of *appellate* counsel, premised on that counsel's failure to pursue claims of ineffective assistance of trial counsel.").

5

This is precisely the sort of "strategic choice[] made after thorough investigation of law and facts" that is "virtually unchallengeable." *Strickland*, 466 U.S. at 690. "[A]ppellate counsel … need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). That is because "[a] brief that raises every colorable issue runs the risk of burying good arguments." *Jones v. Barnes*, 463 U.S. 745, 753 (1983). Counsel here was not required to add a difficult, mostly redundant claim. And that is before the additional deference owed on *habeas* review, deference that is particularly important here where the Appellate Division's ruling on ineffective assistance turned, at bottom, on a state-law issue. *See Brown v. Ercole*, 563 F. App'x 821, 824 (2d Cir. 2014).

### III. Preservation of evidence

Lyons's next argument concerns evidence the police destroyed, evidence the jury never heard of. Pet. 8, 56–76; T684. Remember, Lyons's defense was that he had not intended to help kill Peynado; he was just holding Peynado to prevent Peynado from getting his own gun from his nearby car. Police never did find a gun in that car. T367–68, 641. But there was a gun elsewhere. While police investigated the murder, they spoke with Peynado's girlfriend in a house where she worked as a home aide in Nassau County. T685–86. She had a bag of what she said were Peynado's clothes, and from that bag the police recovered a .45 caliber handgun. T686–87. Although police first retained this gun as Peynado's property, they eventually destroyed it, presumably under the operation of New York law, before it could be turned over to the defense. T688, 694–96; N.Y. Penal Law § 400.05. Lyons claims that this gun would have supported his defense: that Peynado actually did have a gun would have bolstered Lyons's story that he feared Peynado was going for a gun. Thus, the destruction of the gun violated Lyons's constitutional right to full disclosure of "favorable evidence that is material either to guilt or to punishment." *California v. Trombetta*, 467 U.S. 479, 480 (1984).

This argument fails. "Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must … possess an exculpatory value that was apparent before the evidence was destroyed." *Id.* at 488–89 (footnote and citation omitted). More significantly, for constitutional error, the destruction must have been in bad faith. *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988); *see also Newton v. City of New York*, 779 F.3d 140, 157 (2d Cir. 2015). Bad faith would be found if "the Government intentionally" destroyed evidence "to gain some tactical advantage … or to harass." *See Youngblood*, 488 U.S. at 57 (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)). In state court, Lyons never argued that police destroyed the gun in bad faith. Indeed, he strategically omitted this federal constitutional argument from his state-court briefing as part of an argument that he had to meet only a lower state-law threshold on destruction of evidence. *See* Pet. 58–72. The argument fails for that reason alone. *See DiGuglielmo v. Smith*, 366 F.3d 130, 135 (2d Cir. 2004).

The argument also fails as a matter of chronology. Peynado was murdered on June 21, 2002. The next day, police recovered the gun. T564–67, 685–87. If the gun was authorized for destruction at all, destruction was required at the absolute latest by June 22, 2004, and possibly earlier. N.Y. Penal Law § 400.05. Yet Lyons was not found in Columbus until June 24, 2004—two days later. T1004–06. That was when he first told police that he had been worried about Peynado's gun. T1028–29. So the gun was likely destroyed before police even heard the nub of what would become Lyons's defense.[7] Like the missing *venire* oath, it might be odd if, as trial defense counsel claimed, the gun really was destroyed despite being labeled "Homicide investigation evidence." T700. But I cannot see clearly established constitutional error here. The Appellate Division held that Lyons had failed to show that

---

[7] Indeed, the trial court found that the gun was destroyed under the law "as a matter of routine." T706. To the extent this factual finding is presented for my review, I deem it reasonable. *See* 28 U.S.C. § 2254(d)(2). And a "routine" destruction would also refute bad faith.

7

the gun "possesse[d] an exculpatory value evident before [the] destruction, loss, or failure to preserve." *Lyons*, 94 A.D.3d at 1021 (quoting *People v. Jardin*, 88 N.Y.2d 956, 958 (1996) (memorandum)). That is reasonable. And, for the same reason, the trial court was not required to instruct the jury that the state had destroyed exculpatory evidence. *See United States v. Romo–Chavez*, 681 F.3d 955, 961 (9th Cir. 2012).

## IV. *Evidentiary rulings*

Lyons next argues that two evidentiary rulings amounted to a denial of his constitutional right to defend himself. Pet. 10–11, 92–101. First, Lyons wanted to introduce evidence that the gun from the laundry pile existed. As trial counsel put it, "I want the jury to know that this gun that my client mentioned, that there was, in fact, a gun; was not just something that my client created. There was some gun associated with the deceased." T1185. But the trial court precluded the evidence because the gun's connection to Peynado was both speculative and predicated on the girlfriend's hearsay. T1189–90. Second, Lyons was prohibited from cross-examining a medical examiner about Peynado's having been shot three times in unrelated incidents. As trial counsel put it, "We intend to … prove that [Peynado] was a violent person with a violent past, that my client was aware of that." T553–54. (Although the injuries in themselves suggest a violent past as a victim.) Ultimately the point of both proposed tactics was to explain why Lyons would have thought that Peynado was going for a gun that night.

On appeal, Lyons argued that the trial court's exclusion of evidence violated his constitutional right to a fair trial. The Appellate Division held that Lyons "failed to preserve for appellate review his contention that the [trial court's] evidentiary rulings violated his constitutional rights," *Lyons*, 94 A.D.3d at 1021, because in the trial court he never framed his argument in constitutional terms. Even if this argument had been preserved as the Appellate Division required, Lyons would not win on it now. "While the Constitution … prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote,

8

well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury." *Holmes v. South Carolina*, 547 U.S. 319, 326 (2006). "The Constitution permits judges to exclude evidence that is repetitive [or] only marginally relevant, or [that] poses an undue risk of harassment, prejudice, or confusion of the issues." *Id.* (cleaned up). The existence of a gun in Nassau County, connected to Peynado through hearsay, is only marginally relevant to whether Lyons believed Peynado was going for a gun the night he died in Queens. *Cf. United States v. Tate*, 715 F.2d 864, 866 (4th Cir. 1983). I similarly do not see how it could violate the Constitution simply to exclude evidence that Peynado had been shot in unrelated incidents. *See People v. Miller*, 39 N.Y.2d 543, 552–53 (1976). Granted, some past violent behavior—not all—can be relevant to a perceived need for self-defense, *id.*, but, as I discuss next, Lyons did not argue self-defense.

## V. *Justification*[8]

Lyons's defense was always that he was innocent—that he did not intend to help kill Peynado. *See* N.Y. Penal Law §§ 20.00, 125.25(1). But (although there would have been serious evidentiary flaws) theoretically he might have claimed self-defense, maybe even in the alternative: "I wasn't trying to kill him. But if I was, it was only because I thought he was going to kill me first." *See* N.Y. Penal Law § 35.15(1); *Blazic v. Henderson*, 900 F.2d 534 (2d Cir. 1990). Lyons now challenges the trial court's refusal to instruct the jury on self-defense. *See* T1208–10.

The problem, however, is that Lyons rejected an instruction about self-defense *that would have justified killing Peynado*. New York self-defense law separates the defensive uses of ordinary force and

---

[8] Although this was a serious issue at trial and on direct appeal, Lyons does not list it as a ground in his *habeas* petition. The petition, however, does jump from "Ground Two" to "Ground Four," without giving a "Ground Three." Pet. 8–11. The petition also notes that justification was the third ground in the direct appeal. Pet. 2. And Lyons does mention this as part of his upcoming cumulative-error argument. Pet. 12. I think it's appropriate to give Lyons the benefit of the doubt and assume he wanted to include this claim.

9

deadly force. N.Y. Penal Law § 35.15. And, both at trial and on appeal, Lyons argued for an instruction on ordinary force alone. T541–42; Pet. 83–91. He was clear about this:

> MR. SULLIVAN: My client used physical force and he said he used that physical force because he was fearful that the victim would produce a gun and shoot.
>
> THE COURT: Let me refine this a little bit and that is that justification as a defense would have to be asserted as to deadly physical injury.
>
> MR. SULLIVAN: Judge, that is not what I'm asking the Court to do. I'm asking the Court—he never used deadly physical force.
>
> THE COURT: Either as principal or accomplice.
>
> MR. SULLIVAN: He never used deadly physical force.
>
> THE COURT: In neither capacity.
>
> MR. SULLIVAN: Judge, we are not asserting that the shooting of the victim was justified. That is not the defense in this case. That is—just so the record is clear, that is not the defense. The defense is since the major act attributable to my client is that he held the deceased and the law, with respect to physical force, explains when physical force may be used.

T1187–88. Justification for ordinary force would have been relevant if Lyons had been charged for restraining Peynado. But he was charged with restraining Peynado so that Wright could kill him. In other words, with using deadly force, as part of intentional second-degree murder. *See* N.Y. Penal Law § 10.00(11) ("'Deadly physical force' means physical force which, *under the circumstances in which it is used*, is readily capable of causing death or other serious physical injury." (emphasis added)). Thus, as the trial court concluded, T1208–09, the defense that Lyons was entitled to use ordinary force simply was not relevant. At the very least, the denial of the instruction did not "so infect[] the entire trial that the resulting conviction violate[d] due process," which means there is no constitutional issue. *Blazic*, 900 F.2d at 541 (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)).

## VI. *Insufficient evidence*

Lyons also argues that the evidence was insufficient to support his conviction—specifically, that it was insufficient to establish his intent to help Wright kill. Neither on direct appeal nor in this

petition has he presented this argument in terms of federal case law. Pet. 12, 77–82. But, regardless, the evidence was sufficient, and certainly no ground after the double deference of *habeas* review. *See Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (per curiam). First, "viewing the evidence in the light most favorable to the prosecution," *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), "[a] reviewing court may set aside the jury's verdict on the ground of insufficiency of the evidence only if no rational trier of fact could have agreed with the jury," *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (per curiam). And second, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Id.* (quoting *Renico v. Lett*, 559 U.S. 766, 773 (2010)). Here, there was testimony that Lyons restrained Peynado while Wright approached with a gun. Then Wright shot Peynado while Lyons continued to hold him. Then Wright brought Lyons a shirt to change into. Then they ran off together. This is more than enough to conclude that Lyons was trying to help Wright kill Peynado. *See, e.g.*, *Matter of Juan J.*, 81 N.Y.2d 739, 740–41 (1992) (memorandum); *People v. James*, 198 A.D.2d 146, 146–47 (1st Dep't 1993); *People v. McClary*, 138 A.D.2d 413, 413–14 (2d Dep't 1988).

### VII. *Cumulative error*

Finally, Lyons argues that even if any one alleged error alone is insufficient for *habeas* relief, the alleged errors warrant relief when considered cumulatively. Pet. 12, 102–04. The circuits are split over whether cumulative-error claims are cognizable on *habeas*, and the Second Circuit has not weighed in. *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 n.3 (11th Cir. 2012) (discussing the split); *see also Jimenez v. Walker*, 458 F.3d 130, 149 (2d Cir. 2006) (holding that a cumulative-error *habeas* claim was unexhausted without addressing whether it was cognizable); *McCrae v. Lee*, 2017 WL 1319809, at *11 (E.D.N.Y. Apr. 7, 2017) (cumulative-error claims not cognizable). At any rate, there is only one error here, the absent *venire* oath, so that is as cumulative as the error gets. *See United States v. Rahman*, 189 F.3d

88, 145 (2d Cir. 1999) (per curiam) (on direct appeal, rejecting the cumulative-error doctrine because "most of the 'errors'… were not errors at all").

## CONCLUSION

Lyons's petition for a writ of *habeas corpus* is denied. Because Lyons has not made a substantial showing of the denial of a constitutional right, I do not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2).

**SO ORDERED.**

*Edward R. Korman*

Brooklyn, New York
August 10, 2018

Edward R. Korman
United States District Judge